IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Gerald Comer, | ) | C/A No.: 0:08-228-JFA |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER** |
| | ) | |
| Life Insurance Company of Alabama, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This is a class action suit for breach of contract. Plaintiff Gerald Comer ("Comer"), individually and on behalf of the class, alleges that defendant Life Insurance Company of Alabama ("Alabama Life") improperly paid benefits pursuant to certain disease-specific supplemental insurance policies. Currently before the court are the parties' cross motions for summary judgment on the issue of liability. (Dkt. Nos. 97, 98.) The parties have fully briefed the motions and the court heard oral argument at a March 17, 2010 hearing. This order serves to announce the ruling of the court.

I.  Factual and Procedural History

In 1989, Comer purchased a supplemental insurance policy (the "Policy") from Alabama Life. The policy provided that in return for Comer's payment of premiums, Alabama Life would pay benefits in the event that he or another member of his immediate family was diagnosed with cancer. "[S]uch supplemental cancer policies serve . . . to provide financial protection against the catastrophic effects of health care costs." Ward v. Dixie Nat'l Life Ins. Co., 595 F.3d 164, 170 (4th Cir. 2010) (internal citation omitted). The

benefits owed under the policy depended on the specific type of treatment administered. In dispute is the Policy's promise to pay benefits for radiation and chemotherapy in the amount of the "usual and customary charges made." The policy defines the "usual and customary" charge as:

> The usual charge made by a person or entity furnishing the services, treatment or material. Such charge shall not exceed the general level of charges made by others within the geographic area in which the services are rendered for an illness comparable in severity and nature.

(Compl. Ex. 1 at 10.) Comer's wife was diagnosed with cancer in 2007, and Comer began submitting claims to Alabama Life under the Policy. Comer's wife was covered by Medicare and Alabama Life paid Comer's claim for chemotherapy based on the Medicare fee schedules. Comer alleges that the "usual and customary" charge to which he is entitled pursuant to the Policy is the amount initially charged by his wife's healthcare provider.

Comer also alleges that on February 13, 2001, Alabama Life changed its claims handling procedure for policies similar to the Policy at issue, such that prior to February 13, 2001, it paid benefits in the amount billed by the medical provider in the first instance, and that subsequent to February 13, 2001, it determined benefits based solely from explanation of benefit ("EOB") forms from individual policy holders and from Medicare fee schedules.

Comer filed the present suit, styled as a class action, on January 24, 2008, in the United States District Court for the District of South Carolina, Rock Hill Division, alleging breach of contract, breach of contract accompanied by a fraudulent act, and breach of the duty of good faith. The court certified Comer's breach of contract claim for class-wide

adjudication and the form of class notice has been approved to issue to the class. At the court's invitation, the parties filed, and fully briefed, cross motions for summary judgment on the issue of liability, and presented oral argument to the court at a March 17, 2010 hearing.

II.   Legal Standard

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment should be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "[T]he mere existence of some alleged factual dispute between parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Ballenger v. N.C. Agric. Extension Serv., 815 F.2d 1001, 1005 (4th Cir. 1987) (emphasis omitted). A fact is material if proof of its existence or non-existence would affect the disposition of the case under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986). An issue is genuine if the evidence offered is such that a reasonable jury might return a verdict for the nonmovant. Id. at 257. In cases where the parties dispute material facts, "the non-moving party is entitled to have his evidence as forecast assumed, his version of that in dispute accepted, and the benefit of all favorable inferences." Henson v. Liggett Group, Inc., 61 F.3d 270, 275 (4th Cir. 1995). Moreover, the court "may not make credibility determinations or weigh the evidence." Williams v. Staples,

Inc., 372 F.3d 662, 667 (4th Cir. 2004).

When considering cross motions for summary judgment, the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law. Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003). The court must endeavor to resolve factual disputes and competing inferences in favor of the party opposing each motion. Id.

III.  Discussion

The material facts of this case are not in dispute. The liability of Alabama Life pursuant to Comer's claim that it breached the Policy is the sole issue before the court. Judgment as a matter of law must therefore be rendered unto the party so entitled. Under South Carolina law, a contract must be given its "plain, ordinary, and popular meaning." Century Indem. Co. v. Golden Hills Builders, Inc., 561 S.E.2d 355, 358 (S.C. 2002). "When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used." Id. Terms are not susceptible to plain and ordinary definition when they are not ordinarily used or plainly defined.

Liability in this matter rests on whether Alabama Life "breached its obligation to pay benefits in the manner promised in its insurance policy." Comer v. Life Ins. Co. of Alabama, No. 09-242, at *4 (4th Cir. September 2, 2009) (emphasis in original). Specifically, liability turns on "whether the term 'usual and customary charge made' found in [Alabama Life's] insurance policy refers to the amount billed by the provider, or the lower negotiated cost

accepted by the provider." Id. The manner in which Alabama Life paid the benefits in dispute turned on its interpretation of "usual and customary" charge. As noted above, "usual and customary" charge is defined in the Policy as:

> The usual charge made by a person or entity furnishing the services, treatment or material. Such charge shall not exceed the general level of charges made by others within the geographic area in which the services are rendered for an illness comparable in severity and nature.

(Compl. Ex. 1 at 4.) Accordingly, the question is not how to define usual and customary charge on its own terms, but how to define its contractual definition as provided in the Policy. The defined language compels a two-part inquiry. First, the court must ascertain the "usual charge made by a person or entity furnishing the services, treatment or material." Second, the court must determine to what extent the first phrase is limited by the general level of charges made by others within the geographic area in which services are rendered for illness comparable in severity and nature.

Initially, the court notes that it is unclear whether "usual charge" should be defined as a phrase or as two separate words. Whether the words should be defined jointly or severally depends on whether "a person 'who is cognizant of the customs, practices, usages and terminology as generally understood' in the health insurance industry would regard [usual charge] as a term of art rather than two words to be separately defined." Ward v. Dixie Nat. Life Ins. Co., 257 Fed. App'x 620, 625 (4th Cir. 2007) (quoting Hansen v. United Serv's Auto. Ass'n, 565 S.E.2d 114 (S.C. App. 2002).

Comer's expert, Garry Bowman ("Bowman") defined "usual charge" as the amount

5

a heathcare provider typically bills for its services. (Bowman Dep. 54:5–55:25.) Bowman indicates that the usual charge is represented on the providers statement of itemized charges, or its gross bill. (Id. at 57:18–20; 59:21–25; 63:11.) Bowman also stated that the "customary fee is the same thing as the usual fee to the extent that the customary fee that the general charges are in that geographical area are in the same ball park or equal to that usual fee." (Bowman Dep. 57:21–25.) Alabama Life's expert, Glenn Alan Melnick, Ph.D. ("Melnick"), never offered a definition of "usual charge." However, certain healthcare dictionaries do. The McGraw-Hill Essential Dictionary of Health Care defines "usual charge" as "customary charge." The McGraw-Hill Essential Dictionary of Health Care 432 (1988). "Customary charge" is in turn defined as "the amount which a physician or other professional or program normally or usually charges the majority of patients for a given service or procedure." Id. at 184. Accordingly, one definition of "usual charge" appears to be the amount generally charged by a healthcare provider. However, "charge" remains to be defined.

"Charge" is a term of ordinary and popular usage and appears in standard dictionaries. The Oxford English Dictionary defines charge variously as "a pecuniary burden; expense, cost;" "the price required or demanded for service rendered;" as well as "a liability to pay money laid upon a person or estate." The Oxford English Dictionary Vol. III 36 (2d ed. 1989); see also Merriam Webster's Collegiate Dictionary 193 (10th ed. 1994) ("expense, cost" and "the price demanded for something"). However, "charge" also receives its own entry in healthcare dictionaries. The McGraw-Hill Essential Dictionary of Health Care

6

defines "charge" as the "price assigned to a unit of medical service, as a visit to a physician, a prescription, or a day in a hospital." The McGraw-Hill Essential Dictionary of Health Care 159 (1988). Interestingly, that definition continues on to state that "[d]ifferent third party payers may require use of different methods of determining charges." Id. The experts retained by the parties also weighed in with their respective ideas on what "charges" means in the healthcare field. Alabama Life's expert, Melnick, defines "charge" as the "the market price that is required to satisfy the financial obligation to discharge the patient's liability." (Melnick Dep. 72:4–9.) Comer's expert, Bowman, contends that a charge "is what the provider puts on their bill to Medicare" or other payors; it is the "gross charge" prior to allowances or negotiation. (Bowman Dep. 17:20–21; 19:3–4.)

Based on the testimony of the experts, the terms of the Policy, and relevant healthcare dictionaries, the court finds that "charges" constitutes a term of art for the purposes of the Policy. Both experts offered thought-out and detailed definitions of the term and it enjoys its own entry in healthcare dictionaries. Accordingly, the court finds that a person who is cognizant of the customs, practices, usages and terminology as generally understood in the health insurance industry would regard "charge" as a term of art as employed in the Policy. Having determined that "charge" is a term of art, the court must ascertain whether it is susceptible of definition in the context of the Policy.

Alabama Life's expert contends that "charge" connotes liability, while Comer's expert contends that "charge" means price as assigned by the healthcare provider. The healthcare

7

dictionary's entry for "charges" can be read to support either sides' position—it simultaneously indicates that "charge" is the price assigned by the provider while also indicating that this price can be adjusted by third-party payers, such as insurance companies. The Policy fails to state which definition of "charge" is used in the Policy. Accordingly, the court finds that "charge" is patently ambiguous because it is susceptible of more than one meaning and the uncertainty arises from the term itself. See Cogdill v. Equity Life & Annuity Co., 203 S.E.2d 674, 677 (S.C. 1974) (whether a contract term is patently ambiguous is a question of law for the court). When contract terms are susceptible of two reasonable interpretations, the court must construe the term favorably to the insured. Hann, 167 S.E.2d at 423. In this case, the appropriate rule of construction requires the court to find that "charge" means the higher number on the EOB form or the gross charge submitted to Medicare; it is the bill from the provider.

Under the Policy, the "usual and customary" charge means the amount the healthcare provider initially bills most of his patients, so long as it is not more than the general level of charges made by others in the same geographic area in similar circumstances. Alabama Life paid benefits according to the amount accepted by Medicare to discharge the patient's obligation to the provider. In doing so, Alabama Life breached the terms of the Policy.

In the Policy, "charge" is modified by both the individual healthcare providers' "usual charge" and "the general level of charges made by others within the geographic area in which the services are rendered for an illness comparable in severity and nature." The question is

whether these modifying or limiting phrases may be intelligibly read in terms of their "plain, ordinary, and popular meaning." Century Indem. Co., 561 S.E.2d at 358. The court finds that they can, but that fleshing out what they mean in terms of the Policy should be addressed after briefing and argument as this case progresses to the damages phase.

IV.     Conclusion

The court finds that Alabama Life breached its obligation to Comer, and the class, by paying benefits according to the "lower negotiated cost accepted by the provider" rather than "the amount billed by the provider." Comer, No. 09-242, at *4. Accordingly, the court grants Comer's motion for partial summary judgment pursuant to the terms of this order. (Dkt. No. 98.) Alabama Life's motion for summary judgment is denied. (Dkt. No. 97.)

The extent to which the charges were usual and in line with other providers in the geographic area will be the subject of the next phase of the case as those considerations bear on damages rather than liability. The court will hold a status conference on June 17, 2010, at 3:30 p.m. at the Matthew J. Perry Courthouse, in Courtroom 4, to set a briefing schedule and hearing date for the damages phase of the case.

IT IS SO ORDERED.

*Joseph F. Anderson, Jr.*

June 2, 2010                             Joseph F. Anderson, Jr.
Columbia, South Carolina                 United States District Judge