## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
## ROCK HILL DIVISION

| | |
|---|---|
| GERALD COMER, ) | C/A No.: 08-cv-228-JFA |
| ) | |
| Plaintiff, ) | |
| vs. ) | **FINDINGS AND ORDER FOR FINAL** |
| ) | **APPROVAL OF CLASS ACTION** |
| LIFE INSURANCE COMPANY OF ) | **SETTLEMENT AND RELATED** |
| ALABAMA, ) | **RELIEF** |
| Defendant. ) | |
| _____ ) | |

This matter comes before the Court on various motions filed for the purpose of seeking from the Court final approval of a settlement reached in this certified class action (the "LICOA Class Action") between Plaintiff Gerald Comer and Defendant Life Insurance Company of America ("LICOA") on January 20, 2011. Specifically, the pending motions request that the Court enter an Order:

1. Granting final approval of the settlement of the LICOA Class Action on the terms and conditions set forth in the Settlement Agreement;

2. Awarding to Class Counsel attorneys' fees of $612,000 and costs of $96,857.36, and an incentive award of $7,500 to Plaintiff Gerald Comer for prosecution of this class action, with such awards paid out of the total $1,700,000 to be paid by LICOA in settlement;

3. Dismissing the LICOA Class Action, with prejudice;

4. Vacating its prior orders granting partial summary judgment (D.E. 113) and denying reconsideration of same (D.E. 124); and

5. Such other relief and/or direction as may be necessary to implement the class settlement reached by the Parties.

**NOW, THEREFORE,** upon the March 31, 2011 hearing in this matter, having reviewed the motions (including all exhibits thereto) and having heard arguments of counsel, and being otherwise fully advised of same, **IT IS HEREBY ORDERED, ADJUDGED AND DECREED** as follows:

The Complaint in this class action was filed on January 24, 2008. The principal allegation is that the Defendant LICOA breached the provisions of certain cancer insurance contracts when it determined a usual and customary charge for radiation and chemotherapy treatment with reference to the amounts accepted by the provider pursuant to a primary insurance policy (i.e. Blue Cross, Medicare, etc.) instead of looking to the amounts billed for these services by the provider. These allegations and the parties' respective positions have been briefed several times and are reflected in the prior orders of this Court. Relevant to the pending motions, the case has been vigorously contested by the parties both on the merits and as to the suitability of the case as a class action.

Both parties have retained experienced experts in support of their positions, and the parties have engaged in substantial written discovery, document discovery, and depositions to flesh out the factual and legal issues in the case. During the three (3) years the case has been pending, there have been two (2) interlocutory appeals to the Fourth Circuit Court of Appeals, two separate class certification briefings and orders, and multiple briefings and re-briefings on dispositive motions filed by both parties. The current posture of the case is that the Court has issued an interlocutory order granting partial summary judgment in Plaintiff's favor on the construction of the term "charge," as used in the definition of "usual and customary charge" in the policies issued to class members. Procedurally, the case was in an additional discovery period ordered by the Court to determine the "usual" and "customary" charges applicable to the Class

Members, as those terms are defined in the policies. A jury trial on issues pertaining to damages, if any, was scheduled for March 8, 2011.

### I. Plaintiff's Motion for Final Approval of Class Settlement and Related Relief is GRANTED.

As an initial matter, this Court finds that the notice provided to the Class was fair and adequate, and that no further opt-out period is required for purposes of settlement. Pursuant to this Court's class certification dated January 14, 2010, and the subsequent orders on class notice on April 13, 2010 and May 19, 2010, the Parties mailed notice of the pendency of this class action on May 20, 2010 to each of the 84 policy holders who met the class definition certified by the Court. (hereinafter the "Class Notice"). The Class Notice, which was approved by the Court, provided all of the information required by Rule 23, including a period and procedure for Class Members to exclude themselves from the litigation, which one Class Member did. The Class Notice specifically informed Class Members of the binding and preclusive effects of electing to participate in the class: (a) their claims for breach of contract would be determined in this action; (b) they would not be able to sue LICOA in another lawsuit for these breach of contract damages or any other claims arising out of the alleged breach of contract, including bad faith or breach of contract accompanied by a fraudulent act; (c) and they would be bound by any final judgment or release of claims. Because a full and complete Class Notice as required by Rule 23 has already been provided to each Class Members, no additional opt-out period is required for purposes of the pending settlement. On February 28, 2011, Notice of Class Settlement (hereinafter "Settlement Notice") was mailed to Class Members ("Settlement Notice Date") by first class mail, return receipt requested to approximately 83 Class Members whose addresses were reasonably ascertainable. The court-approved Settlement Notice, was adapted from the model notices posted on the website for the Federal Judicial Center, www.fjc.gov, and complies with all

requirements of Rule 23. Specifically, in Q&A format, the notice explains why the Settlement Notice is being provided, the effects of a settlement, the settlement benefits for Class Members, the fees requested by Class Counsel, and Class Members' right to object and/or appear at the hearing.

The Court finds the settlement reached by the Parties is fair, reasonable and adequate under the circumstances and, further, that the interests of the class as a whole are better served if the LICOA Class Action is resolved by the settlement rather than pursued. Therefore, the provisions in the Settlement Agreement related to (a) Settlement Fund and Release, (b) Plan of Allocation of Settlement Fund, (c) Use of Settlement Administrator and Payment of Expenses, and (d) Payment of Future Claims are approved and incorporated into this Order by reference.

In reaching this conclusion, the Court has considered the following factors set forth in *In re Jiffy Lube Securities Litig.*, 927 F.2d 155, 158-59 (4th Cir.1991), *Flinn v. FMC Corp.*, 528 F.2d 1169, 1173-74 (4th Cir.1976), the *Manual for Complex Litigation (Fourth)* § 21.62, and other relevant authorities:

### A. The posture of the case at the time settlement was proposed, including the extent of discovery that had been conducted at that time.

The Court finds that the settlement proposed by the Parties was reached after completion of an extensive period of fact discovery and expert discovery involving the production and review of thousands of pages of discovery documents. At the time the proposed settlement was reached, the Parties were on the brink of trial scheduled to commence March 8, 2011. The posture of the case and the extent of discovery that had been conducted by the Parties at the time the settlement was proposed has thus provided the Parties, their counsel, their experts, as well as this Court, with the opportunity to arrive at "a reasonable judgment on the possible merits of the case." *In re Jiffy Lube*, 927 F.2d at 159.

> **B. The relative strengths of the plaintiff's case on the merits, including the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial**.

Of all the factors considered by the Court in determining the substantive fairness of the settlement, perhaps the most important consideration is the strength of the plaintiff's case, considering the risk of establishing damages, and all other risks of litigation, relative to the terms of the settlement. *In re Jiffy Lube*, 927 F.2d at 159. Although this Court previously granted summary judgment LICOA's liability for breach of the insurance contract (D.E. 113), the damages phase of this litigation has been adversarial and contested throughout the litigation.

Defendant LICOA initially took the position that "usual and customary" charge equals the amount accepted as payment in full by a policyholder's medical provider with regard to a covered benefit. Plaintiff Comer initially took the position that the "usual and customary charge" equals the "actual charge" or amount billed by the policyholder's primary health insurer for a covered benefit. This Court has signaled it would likely reject both damage formulas. The settlement calls for a payment from LICOA in the amount of $1,700,000 to create a settlement fund for the payment of Class Members' past and existing claims, and the payment of Class Counsel's fees and expenses. To give context to this amount, the total difference between the "billed amounts" and the amounts paid by LICOA is approximately $2,300,000.

The settlement avoids the risk that additional expert discovery into the claims files could reduce the amount of damages at issue or that a jury may determine damages to be less than the amount sought by the Class. The settlement also avoids the possibility that any judgment entered in this case or any associated orders by this Court could be altered or reversed on appeal. Settlement at this stage also avoids the numerous disputes raised by LICOA regarding the viability of the Class. Although this Court has granted class certification, LICOA has continued

to attack class certification and has continued to deny any wrongdoing. While Class Counsel believe the class certification was properly decided, settlement at this stage avoids the risk that LICOA could ultimately prevail on any of its efforts to decertify the class, which would leave Class Members with no recovery.

### C. The circumstances surrounding the negotiation of the proposed settlement.

The Court finds that the proposed settlement was the product of good-faith bargaining at arm's length. *In re Jiffy Lube*, 927 F.2d at 159; *Flinn v. FMC Corp.*, 528 F.2d at 1173. Initially, the parties scheduled a formal mediation with B. Rush Smith, III on September 2, 2009. The parties were unsuccessful in settling the case, primarily due to the then recent decision of the Fourth Circuit reversing the denial of class certification. After the Court issued its January 14, 2010 Order certifying the case as a class action, the parties resumed mediation with Mr. Smith on February 25, 2010, but were again unable to reach a final agreement on settlement. After the class damages discovery period ended on December 20, 2010, settlement discussions between the parties resumed, but did not result in settlement. After the hearing on January 7, 2011, the parties began the process of working through data necessary for experts to give opinions on damages, and again resumed their settlement discussions. During the week of January 17th, the parties reached a settlement in principal. Additional details, both substantive and procedural, were addressed and resolved by the parties over the next two weeks. The parties informally notified the Court of settlement on February 2, 2011, and thereafter filed a Joint Motion for Preliminary Approval of Class Settlement on February 24, 2011. There is no indication whatsoever that the proposed settlement is the result of collusion or anything other than counsels' ardent representation of their respective clients.

### D. The relevant experience of plaintiffs' counsel.

The Court finds that Class Counsel in this case possesses the requisite experience and expertise in the area of insurance and class litigation to give assurance of the fairness and adequacy of the proposed settlement. *In re Jiffy Lube*, 927 F.2d at 159; *Flinn v. FMC Corp.*, 528 F.2d at 1173.

### E. The anticipated duration and expense of additional litigation.

This litigation, if not resolved by settlement, likely would have resulted in an expenditure of time and resources by the Parties and the Court of significant proportion. By way of example, up to the date of settlement, Class Counsel had already incurred approximately $96,857.36 in costs and expenses and both Parties had devoted substantial attorney resources to the litigation, with much more anticipated should the matter proceed to trial. This factor weighs heavily in favor of the fairness and adequacy of the proposed settlement. *In re Jiffy Lube*, 927 F.2d at 159.

### F. The degree of opposition to the proposed settlement.

In this case, no written objections have been filed to the settlement, nor did any Class Members appear during the March 31, 2011 fairness hearing to voice their opposition to the settlement. While not wholly determinative of the fairness and adequacy of the settlement, the fact that no or few objections are raised to a proposed class settlement is a significant factor suggesting the fairness and adequacy of the settlement. *Flinn v. FMC Corp.*, 528 F.2d at 1173 (noting the attitude of class members toward settlement is proper consideration for trial court).

### G. Whether the relief received by the named plaintiff is disproportionately large.

The Court finds that the process set forth in the Settlement Agreement is designed to result in an equitable distribution of settlement funds according to the relative extent of each Class Members' damages from Defendant LICOA's conduct. The amount of any settlement

distribution received by a Class Member, including the named Plaintiff, will be determined according to the same criteria. The requested incentive payment of $7,500 is not disproportionately large considering Mr. Comer agreed to prosecute the litigation on behalf of the Class, and agreed to make himself available for deposition and trial.

### H. Whether the settlement amount is much less than that sought in the complaint or indicated by preliminary discovery.

The Class Complaint does not address the amount of relief sought by each Class Member, or the Class as a whole. The settlement calls for a payment from LICOA in the amount of $1,700,000 to create a settlement fund for the payment of Class Members' past and existing claims, and the payment of Class Counsel's fees and expenses. To give context to this amount, the upper limit of what Class Members sought to receive as breach of contract damages (i.e. total difference between the "billed amounts" and the amounts paid by LICOA) is approximately $2,300,000. In light of the fact that this Court previously signaled it would reject that measure of damages, the Court finds that the settlement amount is fair and adequate in that it is not significantly less than that sought by the complaint or preliminary discovery.

### I. Whether major claims or types of relief sought in the complaint have been omitted from the settlement.

The Settlement Agreement, as finally approved by the Court, will resolve all claims for relief sought in the Class Complaint.

### J. Whether particular segments of the class are treated significantly differently.

The Court finds that it is the design of the Settlement Agreement that distribution of the Settlement Fund is based upon a Class Member pro rata share in the total damages, and will be allocated to Class Members on a pro-rata basis determined by the spreadsheets that have been compiled by Defendant LICOA in response to discovery requests. In relevant part, those

spreadsheets contain a column showing the benefit amount paid by LICOA for each line item of treatment, as well as the "submitted amount" from an EOB or statement of account, and the "Excluded Amount," which is the difference between these figures for each line items.

By way of illustration of how the net settlement fund will be distributed, if the total of an individual Class Member's excluded amounts equals 5% of the total excluded amounts for all Class Members submitting claims, that class member would receive 5% of the net proceeds available for distribution to class members. In this way, no Class Member's claim is preferred over another, and each Class Member's claim is reduced by a proportional share of the fees and expenses awarded to Class Counsel.

### K. Whether claimants who are not members of the class are treated significantly differently.

The Settlement Agreement does not address the settlement of claims by the one (1) individual who previously opted out of the class but has yet to file an individual suit.

### L. Recommendation of Counsel.

As reflected in the Joint Motion for Preliminary Approval of Class Action Settlement, the terms of the Settlement Agreement represent the considered judgment of counsel in this case that resolving this litigation on such terms is in the best interests of their respective clients. Such judgments typically are accorded deference by courts assessing the fairness of class settlements. *Manual for Complex Litigation (Fourth) § 21.62.*

### II. Plaintiff's Motion For Award of Attorneys' Fees, Costs and Named Plaintiff Compensation is GRANTED.

This is a common fund case. Historically, attorneys' fees awarded from a common fund have been calculated as a percentage of the fund. *See* Federal Judicial Center, *Manual for Complex Litigation (Fourth)* § 14.121 at 187 (2004) (footnotes omitted). Although the Fourth

Circuit has not addressed the issue, the trend favors use of the percentage method to calculate attorney's fees in common fund cases. *See, e.g., Strang v. JHM Mortgage Sec. Ltd., Pship*, 890 F.Supp. 499, 502-03 (E.D. Va. 1995); *Kidrick v. ABC Television & Appliance Rental*, 1999 WL 1027050 (N.D.W.Va. 1999) (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478, (1980) *Camden I Condominium Assoc. v. Dunkle*, 946 F.2d 768, 771-74 (11th Cir. 1991); *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F.Supp. 209, 215 (S.D.N.Y. 1992).

This Court has already approved a common fund Class recovery created by the efforts of Class Counsel in the amount of $1,700,000. Class Counsel seek a 36 percent common fund fee award for attorneys' fees in the total amount of $612,000, which is comprised of 33 percent of the common fund, or $561,000.00, for services rendered to date, and an additional 3 percent of the common fund, or $51,000.00 in fees to be incurred in finalizing the settlement, paying claims, accounting to the Court and other activities necessary to effect this settlement, as may be required. In determining whether Class Counsel's attorney's fees and costs are reasonable, this Court has considered the amount of the fund created and the number of persons who benefitted from its creation, the absence of objections from Class Members, the skill and efficiency of the attorneys involved, the complexity and duration of the litigation, the risk of non-payment of fees, the amount of time devoted to the case by Class Counsel, and the award in similar cases. *In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 306-307 (3d Cir. 2005); *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 822 (3d Cir. 1995).

If individual class members had chosen to bring individual suits, they would have likely had contingency fee agreements of 40% for the individual actions. After considering the relevant factors, this Court awards Class Counsel attorneys' fees in the amount of $612,000, to be paid from the total $1,700,000 to be paid by Defendant LICOA in settlement of this Class

Action. This Court preliminarily approved repayment of Class Counsel's out-of-pocket costs and expenses in an amount of $96,851.36. The Court awards that amount in costs and expenses, not including the expenses of administering the settlement.

Finally, this Court awards special compensation in the amount of $7,500 to Plaintiff Gerald Comer in recognition of the time and effort he invested for the benefit of the class. *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998). *See also Bogosian v. Gulf Oil Corp.*, 621 F.Supp. 27, 32 (E.D. Pa. 1985); *Van Vranken v. Atl. Richfield Co.*, 901 F.Supp. 294, 299-300 (N.D. Cal. 1995); *In re Dunn & Bradstreet Credit Serv. Customer Litig.*, 130 F.R.D. 366, 374 (S.D. Ohio 1990).

### III. Requested Related Relief is GRANTED.

In light of the above decisions, the LICOA Class Action is dismissed, with prejudice. Further, Defendant LICOA's motion to vacate this Court's prior orders granting partial summary judgment (D.E. 113) and denying reconsideration of the order on partial summary judgment (D.E. 124) is hereby GRANTED.

### IV. Future Costs, Deceased Class Members, Unclaimed Funds, Cy Pres Distribution, and Final Accounting

#### A. Future Costs

Class Counsel anticipates that there will be some future expenses associated with administering the class settlement distribution. LICOA and the Class have agreed to split these administration costs equally, up to $5,000 per party. Class Counsel does not anticipate distribution expenses to exceed $5,000 total, with $2,500 being the responsibility of the common fund.

Class Counsel is therefore authorized to set aside $2,500.00 of the common fund for distribution expenses. If the costs to the fund exceed $2,500.00, then Class Counsel shall be

responsible for any excess. If the costs are less than $2,500.00 then the difference will be included in the *cy pres* distribution included herein.

### B. Deceased Class Members

Based on the results of the notice sent to the class members regarding the final settlement, it appears that 13 class members are deceased. For those that have, or had estates opened, Class Counsel is instructed to pay the proceeds to the listed Personal Representative of the decedent's estate. The Personal Representative should also be advised to seek proper direction from the Probate Court that administered the estate.

For those that had no estates opened, Class Counsel is instructed to use reasonable efforts to notify the next of kin of the Decedent of the estate's proceeds and the next of kin will then decide whether to open an estate to accept the funds. Any funds paid on behalf of deceased class members must be to the Personal Representative of the Estate.

For those that decide to refuse the funds, those funds shall be retained by class counsel and held pending order of this Court.

### C. Unclaimed Funds

Should any funds checks go uncashed for 90 days, Class Counsel is instructed to try to contact the recipient of the check. If contact cannot be made, or the class member refuses the funds, Class Counsel is directed to retain those funds pending order of this Court.

### D. Cy Pres and Final Accounting

Within 120 days, Class counsel will provide the Court with a final accounting including the amount of any unclaimed funds. The Court will then direct Class Counsel to either continue in an effort to contact the recipients or to distribute the funds to the South Carolina Bar Foundation. The Court will make further orders at the proper time.

IT IS SO ORDERED.

March 31, 2011
Columbia, South Carolina

*Joseph F. Anderson, Jr.*
Joseph F. Anderson, Jr.
United States District Judge